¶ 33.
ANN WALSH BRADLEY, J.
{dissenting). The majority's reasoning evinces a misunderstanding of the concept of consent to personal jurisdiction set forth both in Wisconsin statutes and case law. Ambac, a Wisconsin plaintiff, filed a lawsuit in its home state against a foreign corporation that is registered to conduct business in Wisconsin and has assigned an agent to receive service of process here.
¶ 34. Countrywide, a foreign corporation, has used Chapter 180 of the Wisconsin Statutes to file over one hundred foreclosure lawsuits against Wisconsin *556 homeowners in Wisconsin courts. But now that the shoe is on the other foot, it contends that Wisconsin courts no longer have jurisdiction under that same chapter when lawsuits are filed against it. And, a majority of this court agrees.
¶ 35. The majority concludes that "[b]ecause the text of [Wis. Stat.] § 180.1507 does not even mention jurisdiction, much less consent, Countrywide's compliance with the statute does not, on its own, confer jurisdiction." Majority op., ¶ 1 (emphasis added). This myopic lens through which the majority focuses gives rise to its folly.
¶ 36. I address two significant flaws upon which the majority rests it conclusion. First, it employs a misguided framework of statutory interpretation by examining a statute "on its own." Majority op., f 1. Individual statutes do not exist in isolation from the wider embrace of the statutory scheme. They must be examined in context. Second, the majority fails to recognize the distinction between cases where general personal jurisdiction is conferred by consent and cases that looked instead to contacts with a forum state to establish such jurisdiction.
f 37. As did the court of appeals, I conclude that the circuit court has general personal jurisdiction over Countrywide in this action. Under Wisconsin's statutory scheme, Countrywide consented to personal jurisdiction in Wisconsin when it appointed a registered agent in order to accept service of process pursuant to Wis. Stat. §§ 180.1507 and 180.1510(1). Accordingly, I respectfully dissent.
HH
¶ 38. At the center of the majority's plain language analysis lies its search for the words "consent" *557 or "jurisdiction" in Wis. Stat. § 180.1507. Examining the statute in isolation, the majority contends that "[ajbsent express statutory language asserting general jurisdiction over a foreign corporation based on its appointment of an agent for service of process, we will not depart from the plain meaning of § 180.1507, which serves merely as a registration statute, not a conferral of consent to general jurisdiction." Majority op., ¶ 29.
f 39. Over and over, it repeats this plain language refrain. See, e.g., Majority op., ¶ 15 ("The text of Wis. Stat. § 180.1507 is devoid of any language regarding either consent or jurisdiction."); see also id. ("The language is straightforward, and none of the words— independently or taken together — suggest consent to jurisdiction."); Id., f 20 ("Ambac disengages from the plain language of Chapter 180. Like Wis. Stat. §§ 180.1507 and 180.1510(1), Wis. Stat. § 180.1505(2) mentions neither consent nor jurisdiction; thus, its plain language undermines Ambac's argument.").
¶ 40. Indeed, the absence of the words "consent" or "jurisdiction" proves to be a double-edged sword for the majority. True, Wis. Stat. § 180.1507 does not expressly state that consent to general personal jurisdiction is conferred. On the other hand, it does not expressly negate it either, as do some jurisdictions discussed below.[1]
¶ 41. By narrowing the scope of its search and focusing on each statute in isolation, the majority misses the proverbial forest for the trees. It is only by examining Wis. Stat. § 180.1507 in the context of the statutory scheme that we see the full picture and can discern its plain meaning. State ex rel. Kalal v. Cir. Ct. *558 for Dane Cty., 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[statutory language is interpreted in the context in which it is used... in relation to the language of surrounding or closely-related statutes . . . .").
f 42. Chapter 180, Wisconsin's Business Corporations Law, governs foreign corporations conducting business in Wisconsin. The first statutory requirement relevant to this analysis is set forth in Wis. Stat. § 180.1501, which instructs that foreign corporations conducting business in Wisconsin must obtain a certificate of authority.[2] If a foreign corporation does not obtain a certificate of authority, then it is unable to sue in Wisconsin courts. Wis. Stat. § 180.1502(1).[3]
f 43. It is in this context that Wis. Stat. § 180.1507 requires that a foreign corporation "authorized to transact business in this state shall continuously maintain in this state a registered office and registered agent." Pursuant to Wis. Stat. § 180.1510(1), a registered agent "is the foreign corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation."[4] Even though neither § 180.1507 nor § 180.1510(1) expressly contain the words "consent" or "jurisdiction," when read together they plainly *559 provide that when a foreign corporation has a registered agent, among its acknowledged functions is the receipt of the service of process (i.e. receipt of a summons and complaint).
¶ 44. What reason exists for the appointment of a registered agent to receive service of a summons and complaint other than the purpose of being subject to a lawsuit? The majority offers none. When read together, the plain meaning of Wis. Stat. §§ 180.1507 and 180.1510(1) is that appointment of a registered agent to receive service of process constitutes consent to jurisdiction.
¶ 45. This plain meaning interpretation is further made manifest by examining Wis. Stat. § 180.1505(2), which is part of the statutory scheme. It provides that once a foreign corporation obtains a certificate of authority, it is not only able to sue in Wisconsin courts, but is placed on equal footing with domestic corporations. Pursuant to § 180.1505(2), a foreign corporation with a valid certificate of authority has the same privileges and duties as a domestic corporation:
A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and, except as otherwise provided by this chapter, is subject to the same duties, restrictions, penalties and liabilities now or later imposed on, a domestic corporation of like character.
*560 Significantly, the duties of domestic corporations include being subject to general jurisdiction in Wisconsin. Wis. Stat. § 801.05(l)(c).[5]
¶ 46. The legislative history further confirms this plain meaning interpretation. Drafting file for 1989 Wis. Act 303, Analysis by the Legislative Reference Bureau of 1989 A.B. 780, Legislative Reference Bureau, Madison, Wis. Prior to the adoption of the Wisconsin Business Corporation Act by the Wisconsin Legislature in 1989, the State Bar of Wisconsin established the Corporate and Business Law Committee to review and recommend to the Wisconsin Legislature revisions to Wisconsin's Business Corporations law. See Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, Wisconsin Business Corporation Law intro.-2 (State Bar of Wis. CLE Books 1992). In drafting the proposed revisions of the Business Corporations Law, the Wisconsin State Bar Committee selected appropriate provisions from the Revised Model Business Corporation Act.[6] Id. at intro.-3.
¶ 47. The selected provisions included § 15.07, upon which Wis. Stat. § 180.1507 is based. See Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, Wisconsin Business Corporation Law 15-30 to 15-31 (State Bar of Wis. CLE Books 1992). The Official Comment to § 15.07 of *561 the Revised Model Business Corporation Act explains the rationale for requiring the appointment of a registered agent when a foreign corporation obtains a certificate of authority. It provides that: "[a] foreign corporation that obtains a certificate of authority in a state thereby agrees that it is amenable to suit in the state." Revised Model Business Corporations Act § 15.07 cmt. (Am. Bar Ass'n 1984). Thus, when the legislature enacted § 180.1507 in conformity with the Revised Model Business Corporation Act, it intended that a foreign corporation consent to jurisdiction when it complied with the registration statute.[7]
¶ 48. Finally, I observe that the majority's protestations that it will not rewrite the statute ring hollow. See Majority op., ¶ 15. That is exactly what the majority is doing here. It writes into the statute an interpretation never adopted by the Wisconsin Legislature.
¶ 49. The Model Registered Agent Act provides that "[t]he designation or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state." Model Registered Agents Act § 15 (Unif. L. Comm'n 2015).
¶ 50. At least eleven jurisdictions have chosen to enact this Model Act limitation — but not Wisconsin.[8] *562 Never mind, the majority has done it instead. Mimicking the words of the Model Act, the majority concludes "compliance with the statute [Wis. Stat. § 180.1507] does not, on its own, confer jurisdiction." Majority op., ¶ 1.
¶ 51. There is nothing in the text of Chapter 180 indicating that the legislature intended to limit Wisconsin's registration statute as a basis for general personal jurisdiction. Because there is no such statutory language limiting Wisconsin's registration requirement, the majority errs when it takes it upon itself to rewrite the statute in contravention of the actual language chosen by the legislature.
1 52. Pursuant to the statutory scheme set forth above, Countrywide not only obtained a certificate of authority, but it also appointed a registered agent and exercised its privilege to use Wisconsin courts. Accordingly, I conclude that Countrywide consented to personal jurisdiction in Wisconsin when it appointed a registered agent in order to accept service of process pursuant to Wis. Stat. §§ 180.1507 and 180.1510(1).
II
¶ 53. In an attempt to support its "plain language" statutory interpretation, the majority relies heavily on United States Supreme Court precedent addressing jurisdiction over a non-consenting defendant. The majority's reasoning evinces a misunderstanding of the concept of consent to personal jurisdic *563 tion. In reaching its conclusion, the majority conflates two lines of United States Supreme Court cases that separately address personal jurisdiction over consenting and non-consenting defendants.
¶ 54. Central to the majority's analysis is the contention that the United States Supreme Court's decision in Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), "dispensed with the 'purely fictional' notions of implied consent and presence-by-agent. . . ." Majority op., ¶ 10. In Int'l Shoe, the Supreme Court addressed personal jurisdiction under a long-arm statute. 326 U.S. 310 (1945). It concluded that due process requires that a defendant have certain minimum contacts in a forum in which it may be sued so as not to offend "traditional notions of fair play and substantial justice." Id. at 316 (quotation marks and quoted source omitted).
¶ 55. Likewise, the majority relies on Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) and Daimler AG v. Bauman, 134 S. Ct. 746, 759-60 (2014), which analyzed the due process implications of effecting general jurisdiction over non-consenting defendants. See Majority op., ¶ 22. In Daimler, the Supreme Court reasoned that a court may assert general jurisdiction over foreign corporations when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[9] Daimler, 134 S. Ct. at 754 (quoting Goodyear, 564 U.S. at 919).
f 56. The majority errs, however, in failing to distinguish the above non-consensual cases with cases *564 that have long-established consent as a basis for establishing personal jurisdiction over a foreign corporation. Although the majority acknowledges that the Supreme Court has never overruled Pennsylvania Fire, it refuses to follow controlling precedent.[10] Majority op., ¶ 25.
¶ 57. In Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co., 243 U.S. 93 (1917), an Arizona corporation obtained a license to conduct business in Missouri and consented to service of process in the state in compliance with certain statutory requirements. Id. at 94. It asserted that consent to service of process was not sufficient to confer jurisdiction without violating the Fourteenth Amendment right to due process of law. Id. at 94-95. The Pennsylvania Fire court rejected this argument, explaining that "[t]he construction of the Missouri statute thus adopted hardly leaves a constitutional question open." Id. at 95. Accordingly, the Supreme Court unequivocally determined that registration under state business statutes is a voluntary act that leaves "no doubt of the jurisdiction of the state court."
¶ 58. The Supreme Court reaffirmed Pennsylvania Fire in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 175 (1939), concluding that where a corporation designated an agent for service of process in conformity with the General Corporation Law of *565 New York, "service on the agent shall give jurisdiction of the person." Quoting Judge Cardozo, Neirbo explained that the appointment of a registered agent pursuant to a state statute is consent to a "true contract," where "[t]he contract deals with the jurisdiction of the person":
The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent.... The contract deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of subject-matter. It means that, whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person.
Id. (quoting Bagdon v. Phila. & Reading Coal & Iron Co., 217 N.Y. 432, 436-37). Thus, Nierbo concluded that a statute calling for designation of a registered agent to accept service of process "is constitutional, and the designation of the agent 'a voluntary act.' " Id. (quoting Pa. Fire. Ins. Co., 243 U.S. at 96).
¶ 59. Additionally, the majority uses cases involving non-consenting defendants to overrule Wisconsin precedent regarding consenting defendants. In State ex rel. Aetna Ins. Co. v. Fowler, 196 Wis. 451, 457, 220 N.W. 534 (1928), this court concluded that although the registration statute at issue never mentioned the word "jurisdiction," defendants were "bound by their acceptance of such license to hold themselves amenable to the jurisdiction of our courts." Over the years, this basic understanding that appointment of a registered agent to accept service of process evinces consent to jurisdiction has been reaffirmed. See also, Punke v. Brody, 17 Wis. 2d 9, 13-14, 115 N.W.2d 601 (1962); Hasley v. Black, Sivalls & Bryson, Inc., 70 Wis. 2d 562, 582, N.W.2d 446 (1975).
*566 f 60. In Punke, this court reaffirmed Aetna, reasoning that "[a] state can exercise through its courts jurisdiction over an individual who consents to such exercise of discretion." 17 Wis. 2d at 13 (quoting Restatement (First) of Conflict of Laws § 81 (1934)). Punke explained appointment of a registered agent to receive service of process is considered consent to jurisdiction:
The consent here considered as a basis of jurisdiction is actual assent to the exercise of jurisdiction. .. . Consent. . . may be given generally with respect to actions which may thereafter be brought. Illustrations: A appoints an agent in state X and authorizes him to receive service of process in any action brought against Ain a court of X. B brings an action against A in a court of X and process is served upon the agent. The court has jurisdiction over A.

Id.

¶ 61. Contrary to the majority's assertion, there is no rationale for limiting Punke's reasoning to cases only where an individual, rather than a corporation, consents to jurisdiction. See majority op., f 27. Indeed, the majority provides no support for the arbitrary distinction it draws here. This court's decision in Punke relied on the principles set forth in the Restatement of Conflict of Laws that apply to consent to personal jurisdiction.
f 62. Consistent with the rational of the Restatement relied on by Punke, the Second Restatement Conflict of Laws more recently explained that a state may exercise jurisdiction when a foreign corporation consents by appointing a registered agent for service of process:
A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or *567 a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the agent or official to accept service extends.
Restatement (Second) of Conflict of Laws § 44 (Am. Law Inst. 1970); see also id. § 43 cmt. B ("Most commonly . . . consent by a corporation takes the form of the appointment of a statutory agent to receive service of process in compliance with the statutory requirements of a state in which the corporation desires to do business.").
f 63. Likewise, in Halsey, this court again reaffirmed that consent by appointment of a registered agent for service of process is a basis for personal jurisdiction. 70 Wis. 2d at 582. Halsey differentiated between various bases for consent, explaining that "a defendant entity might be subject to personal jurisdiction by its actual presence in a state via incorporation there, or by its consent evidenced by appointment of an agent for service of process, or by the presence evidenced in continual and substantial operations." Id. Thus, Halsey concluded that there would be no burden on due process by a forum's exercise of personal jurisdiction in such circumstances. Id.
¶ 64. According to the majority, however, "[t]he shade of constitutional doubt that Goodyear and Daimler cast on broad approaches to general jurisdiction informs our assessment of this court's older cases." Majority op., ¶ 24. The majority reasons that Pennsylvania Fire and Aetna reflect outdated reasoning and represent a disfavored approach to general jurisdiction. Majority op., ¶ 25. Thus, the majority asserts that "we instead give preference to prevailing due process standards . . . ." Id.
*568 ¶ 65. The majority fails to recognize that cases like Int'l Shoe and Daimler maintained a clear distinction between consenting and nonconsenting defendants. There is nothing outdated or disfavored about the approach taken in Pennsylvania Fire, Nierho or Aetna. Instead, they address an entirely separate issue from the question presented in the cases relied on by the majority.
¶ 66. Int'l Shoe limited its analysis to cases where "no consent to be sued or authorization to an agent to accept service of process has been given." 326 U.S. at 317. This distinction has been consistently recognized by the United States Supreme Court. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (analyzing minimum contacts "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there"); Ins. Corp. of Ir. V. Compagnie Des Bauxites De Guiñee, 456 U.S. 694, 712-13 (1982) (describing Int'l Shoe as establishing that " 'minimum contacts' represent^] a constitutional prerequisite to the exercise of in perso-nam jurisdiction over an unconsenting defendant"); Kopke v. A. Hartrodt S.R.L., 2001 WI 99, ¶ 22, 245 Wis. 2d 396, 629 N.W.2d 662 ("The Due Process Clause of the Fourteenth Amendment limits the exercise of jurisdiction by a state over a nonconsenting nonresident."). Likewise, Daimler distinguishes its analysis of contacts in a forum state from cases involving consent to jurisdiction. See Daimler, 134 S. Ct. at 755-65 (describing "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.").
f 67. In both Int'l Shoe and Daimler, there is no mention of either Pennsylvania Fire or Neirbo, much less any indication that the Supreme Court intended to *569 overrule those cases. Further, the rational in cases such as Int'l Shoe and Daimler is wholly consistent with the rule that a foreign corporation can consent to personal jurisdiction by registering to do business in a state.[11]
¶ 68. Concerns justifying the narrowing scope of general jurisdiction are not present when a corporation voluntarily registers to do business and designates an agent in the state. For example, Daimler expressed concern that foreign corporations be able "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Daimler, 134 S. Ct. at 762 (quoting Burger King Corp. 471 U.S. at 472). However, when a foreign corporation voluntarily consents to jurisdiction by complying with a registration statute, there is no uncertainty that this conduct will subject it to general jurisdiction in that forum. These concerns are certainly not present in this case, where Countrywide has long enjoyed the privilege of using Wisconsin courts and in exchange consented to the general jurisdiction of these same courts.
¶ 69. The majority's failure to distinguish between cases involving consenting and non-consenting defendants pervades its analysis. For example, the majority analyzes Wis. Stat. § 180.1507 in the context of Wisconsin's long-arm statute, rather than in the context of the statutory scheme where it is located. According to the majority, if Wis. Stat. §§ 180.1507 and *570 180.1510(2) were interpreted as effecting consent to general jurisdiction, then Wisconsin's long-arm statute would be rendered superfluous. Majority op., ¶ 17.
¶ 70. Wisconsin's long-arm statute, Wis. Stat. § 801.05(l)(d) gives Wisconsin courts personal jurisdiction over a defendant "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." The majority asserts that if registration pursuant to Wis. Stat. § 180.1507 "were sufficient to expose foreign corporations to general, all-purpose jurisdiction of Wisconsin courts, the long-arm statute would effectively serve no purpose." Majority op., ¶ 17.
¶ 71. This argument is unpersuasive, however, because the long-arm statute does not provide an exclusive means by which Wisconsin courts can obtain personal jurisdiction. Where there is consent to jurisdiction, there is no need to establish jurisdiction under the long-arm statute. See Kohler Co. v. Wixen, 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996) ("In Wisconsin, courts may obtain personal jurisdiction over a party through any one or more of the grounds stated in Wisconsin's long-arm statute or by consent.") (emphasis added).
¶ 72. In sum, I conclude that the circuit court has personal jurisdiction over Countrywide in this action. Accordingly, I respectfully dissent.
1 73. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 See infra, ¶ 18 n.8.

 Wis. Stat. § 180.1501(1) provides: "A foreign corporation may not transact business in this state until it obtains a certificate of authority from the department."

 Wis. Stat. § 180.1502(1) provides: "A foreign corporation transacting business in this state without a certificate of authority, if a certificate of authority is required under s. 180.1501, may not maintain a proceeding in any court in this state until it obtains a certificate of authority."

 Wis. Stat. § 180.1510(1) provides: "Except as provided in subs. (2) and (3), the registered agent of a foreign corporation authorized to transact business in this state is the foreign *559 corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation."

 Wis. Stat. § 180.05(l)(c) provides that: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances . . . [i]n any action whether arising within or without this state, against a defendant who when the action is commenced ... [i]s a domestic corporation or limited liability company . . . ."

 Revised Model Business Corporations Act § 15.07 cmt. (Am. Bar Ass'n 1984).

 The legislative reference bureau's analysis to 1989 Assembly Bill 180 explained, "[m]any of the bill's provisions parallel the revised model business corporation act, as adopted in 1984 by the corporate laws committee of the American Bar Association." 1989 Assembly Bill 780, Analysis by the Legislative Reference Bureau ¶ 1 (LRB-1540/2); see also Fergus, Scott et al., The New Wisconsin Business Corporation Law, iii (1990) ("the overall goal of AB 780 was to provide as much uniformity as possible with the ABA Model Act.").

 See Ark. Code Ann. §4-20-115 (2016); D.C. Code § 29-104.14 (2016); Idaho Code § 30-21-414 (2016); 2017 Ind. *562 ALS 118, SECTION 12 (Apr. 21, 2017); Me. Stat. tit. 5, § 115 (2016); Miss. Code Ann. § 79-35-15(2016); Mont. Code Ann. § 35-7-115 (2017); Nev. Rev. Stat. § 77.440 (2016); N.D. Cent. Code § 10-01.1-15 (2015); S.D. Codified Laws § 59-11-21 (2015); Utah Code Ann. § 16-17-401 (2016).

 The United States Supreme Court continues to revisit the issue of non-consenting personal jurisdiction, most recently in Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 377 P.3d 874 (Cal. 2016), cert. granted, 137 S. Ct. 827 (2017).

 There are other jurisdictions that have similarly conflated these two lines of cases. See e.g., Wal-Mart Stores, Inc. v. Lemaire, No. 1 CA-SA 17-0003 (Ariz. Ct. App. May 11, 2017). However, still other recent decisions have concluded, as I do, that appointment of a registered agent constitutes consent to personal jurisdiction. See, e.g., Senju Pharm. Co. v. Metrics, Inc., 96 F. Supp. 3d 428, 438-40 (D.N.J. 2015) (determining that Daimler "did not disturb the consent by-in-state service rule.").

 The United States Supreme Court continues to distinguish between consenting and non-consenting defendants. In BNSF Rwy. Co. v. Tyrrell, 137 S. Ct. 1549, 1558-60 (2017), it analyzed the railroad's minimum contacts with the forum state under Daimler. However, it recognized consent as a separate issue and specifically declined to address it. Id. at 1560.